UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDERICK JOSEPH HARRIS,

        Petitioner,

v.                                      CASE NO. 2:13-CV-14647
                                       HONORABLE GEORGE CARAM STEEH

JOE BARRETT,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

    Frederick Joseph Harris, ("petitioner"), confined at the Parnall Correctional Facility in Jackson, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for two counts of assault with intent to do great bodily harm less than murder, M.CL.A. 750.84; one count of felon in possession of a firearm, M.C.L.A. 750.224f; and one count of possession of a firearm in the commission of a felony, M.C.L.A. 750.227b. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

**I. Background**

    Petitioner was convicted of the above offenses following a jury trial in the Allegan County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Bobby Jo Felty and Brandon Beardsley testified at trial that when they repossessed defendant's 2008 Chevrolet Silverado pickup truck, defendant

came out of his house with a long gun and threatened to kill them. As they towed the truck away, Felty and Beardsley saw the white Pontiac Bonneville in defendant's driveway start up and later saw it come toward the tow truck. Felty and Beardsley could not see who was driving the white Bonneville, but neither man had seen anyone but defendant at defendant's house.

The Bonneville sped toward the tow truck, and Felty and Beardsley heard a gunshot. While Beardsley called 911, Felty swerved across the road to prevent the Bonneville from coming alongside, and there was another gunshot. Felty testified that the gunshots sounded similar to those from a .22–caliber rifle, while Beardsley testified that the gunshots sounded like rifle shots. At the next intersection, Felty turned, and the Bonneville turned around and left the scene.

Shortly thereafter police officers came to defendant's home and he gave them permission to search his property. The officers found a shotgun and .22–caliber rifle in the bed of a dump truck. Though the truck was covered in a layer of dew, the guns were dry and the rifle smelled as though it had been fired recently.

Defendant testified at trial that two Mexicans stole his truck, and that he tried to follow them in his Bonneville but could not find them. He then called 911 to report the theft of his truck and went home. He testified that the guns belonged to his brother, and that he had put them in the dump truck because he was afraid that the police might shoot him if they found the guns.

A jury convicted defendant of two counts of assault with intent to commit great bodily harm less than murder, possession of a firearm during the commission of a felony, and felon in possession of a firearm. He was acquitted of two charges of assault with intent to murder.

*People v. Harris,* No. 304521, * 1-2 (Mich.Ct.App. October 23, 2012).

Petitioner's conviction was affirmed on appeal. *Id.; lv. den.* 493 Mich. 968, 829 N.W.2d 209 (2013).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Harris was deprived of witnesses and 911 information.

II. The jury's verdict was improperly threatened [judicial misconduct].

III. Harris was not tried within 180 days.

IV. Harris was not provided an evidentiary hearing.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal

-3-

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Habeas relief is not appropriate unless each ground which supported the state court's decision is examined and found to be unreasonable under the AEDPA. *See Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012).

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents.

*Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III. Discussion

**A. Claim # 1. The ineffective assistance of counsel claims.**

In his first claim, petitioner appears to argue that his trial counsel was ineffective.[1]

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing,

---

[1] Petitioner raised these claims as ineffective assistance of counsel claims in his supplemental *pro per* brief on appeal that he filed in addition to the appeal brief that was filed by appellate counsel. In Michigan, a criminal defendant is permitted to file a supplemental *pro per* brief on appeal in addition to any appeal brief that may have been filed by appellate counsel. See Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004). Due to the brevity of the petition for writ of habeas corpus, this Court is willing to incorporate the arguments raised in petitioner's state appellate court briefs which he attached to his petition or which have been included in the Rule 5 materials as being part of petitioner's application for writ of habeas corpus. *See e.g. Burns v. Lafler,* 328 F. Supp. 2d 711, 717, n. 2. (E.D. Mich. 2004).

the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

    More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a

state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Petitioner first claims that his counsel was ineffective for failing to object to the fact that the police searched his house and property without first obtaining a search warrant. The Michigan Court of Appeals rejected petitioner's claim on the ground that petitioner consented to the search, thus, any objection to the warrantless search would have been futile. *Harris,* Slip. Op. at * 5.

To prove that counsel's failure to litigate a Fourth Amendment claim competently is the principal claim of ineffectiveness, a defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence, in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *See also Mack v. Jones,* 540 F. Supp. 2d 840, 848 (E.D. Mich. 2008).

Searches and seizures that are conducted by law enforcement without a warrant are unreasonable *per se*, subject to several specifically established and well-delineated exceptions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). One such established exception to the general warrant and probable cause requirements is a search conducted pursuant to consent. *Id.* at 219. A warrantless search is thus reasonable when the sole occupant of a house or apartment consents to the search. *See Fernandez v. California,* 134 S. Ct. 1126, 1132 (2014).

The officers testified at trial that petitioner consented to the search. Although petitioner in his supplemental *pro per* Standard 4 brief and in numerous attachments claimed that he did not consent to the search, the Michigan Court of Appeals obviously chose to reject petitioner's version of events and to find the officers' testimony more credible. A federal court must apply the presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption. *Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001); *Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 946 (E.D. Mich. 2003); 28 U.S.C. § 2254(e)(1). The presumption of correctness given to the findings of a state court on federal habeas review also applies to the factual findings of a state appellate court

based on the state trial record. *See Sumner v. Mata,* 449 U.S. 539, 546-47 (1981). The presumption of correctness also "also applies to those implicit findings of fact that are inherent in [a state court's] resolution of conflicting evidence." *McPherson v. Woods*, 506 Fed. Appx. 379, 387 (6th Cir. 2012). A state appellate court's summary determination that affidavits or other offers of proof lack credibility is entitled to a presumption of correctness in federal habeas corpus proceedings. *See e.g. In re Byrd,* 269 F.3d 561, 564-65, 574-75 (6th Cir. 2001).

Petitioner has presented no credible evidence to contradict the officers' testimony or to otherwise suggest that petitioner did not consent to the search. Because petitioner consented to the search, he has failed to show that counsel would have been successful in challenging the warrantless search of petitioner's house and property and is thus not entitled to relief on his ineffective assistance of counsel claim. *See U.S. v. Santana,* 962 F. Supp. 2d 906, 926 (E.D. Mich. 2013).

Moreover, if petitioner had refused consent, the police would most likely have obtained a warrant to search. The "inevitable discovery" doctrine provides that evidence found in an unlawful search may be admitted if the government can show that the evidence inevitably would have been discovered by lawful means. *Nix v. Williams*, 467 U.S. 431, 444 (1984); *United States v. Kennedy*, 61 F. 3d 494 (6th Cir. 1995). Because the "inevitable discovery exception" to the exclusionary rule would have most likely applied in this case, petitioner suffered no prejudice from counsel's failure to file a motion to suppress and thus, his ineffective assistance of counsel claim fails. *See Jefferson v. Fountain,* 382 F. 3d 1286, 1297 (11th Cir. 2004).

Petitioner next contends that his counsel was ineffective for not preparing a

defense or calling witnesses, in that counsel failed to present any evidence concerning what petitioner refers to as "911 Genetic Markers." Felty testified that when Beardsley called 911, the cellular telephone call was routed to a Van Buren County 911 operator. Petitioner argued before the Michigan Court of Appeals, and appears to argue here, that the "911 Genetic Markers" ensure that if a 911 call is made in Allegan County, the call would be received by an Allegan County 911 operator. Petitioner alleges that this evidence would call into question the credibility of the victims concerning their testimony that they were in Allegan County when they called 911.

The Michigan Court of Appeals rejected petitioner's claim:

> There is absolutely nothing in the record to indicate that any evidence or testimony about the "911 Genetic Markers" would support defendant's assertions that, if Beardsley's 911 telephone call was answered by a 911 operator in Van Buren County, Beardsley and Felty could not have been in Allegan County when Beardsley called 911. Accordingly, defendant has not established the factual predicate for his claim.

*Harris,* Slip. Op. at * 5-6 (internal citation omitted).

Petitioner is not entitled to relief on his claim because his allegations are conclusory and unsupported. Conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief. *See, e.g., Washington v. Renico,* 455 F. 3d 722, 733 (6th Cir. 2006)(bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding); *Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998)(conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief). Petitioner has presented no evidence to this Court or to the Michigan courts to establish that the mere fact that the victims' 911 call was answered by a Van Buren County operator

would have precluded them from being in Allegan County at the time that they made the call. Petitioner has failed to show that his counsel was ineffective in failing to obtain and produce these 911 records because petitioner has failed to show, in light of the other evidence at trial, that such records would establish anything that could have changed the result of his trial. Accordingly, the Michigan Court of Appeals did not unreasonably apply *Strickland* in rejecting his ineffective assistance of counsel claim. *See e.g. Davis v. Burt*, 100 Fed. Appx. 340, 346-47 (6th Cir. 2004). Petitioner is not entitled to habeas relief on his first claim.

### B. Claim # 2. The judicial misconduct claim.

Petitioner next claims that the judge committed misconduct by forcing the jury at "gun point" to change their verdict from not guilty on all but one count to guilty on several counts.

The Michigan Court of Appeals rejected petitioner's claim:

> Defendant also argues that the trial court forced the jury to change its verdict and so engaged in judicial misconduct. No claim of misconduct or of alteration of the verdict was made below. According to defendant, the jury found defendant not guilty on all charges except for the charge of felon in possession of a firearm, of which it thought defendant might be guilty because, as the jury foreman explained, defendant owned the land. Defendant claims that after the jury announced its verdict, the trial court, visibly upset, asked the jury foreman if the jury had read its order, which was on a "pink sticky pad" that had been delivered to the jury with coffee cups during deliberations. The trial court then demanded that the jury obey its order and "check the box's [sic] the sticky pink pad told them to check." We have reviewed with care the record of the jury's presentation of the verdict and the court's receipt of that verdict and find that defendant's allegations of misconduct are wholly inconsistent with that record. While there was some brief confusion when the jury read its verdict, the judgment accurately reflects the jury's verdict as confirmed by the jurors and there was no judicial misconduct.

*Harris,* Slip. Op. at * 6.

The presumption of correctness given to the findings of a state court on federal habeas review applies to the factual findings of a state appellate court based on the state trial record. *See Sumner v. Mata,* 449 U.S. at 546-47. The Michigan Court of Appeals reviewed the trial court record and determined that there was nothing in the transcript to even remotely suggest that the judge had coerced a verdict. This Court has also reviewed the transcript and there is nothing to suggest that the judge coerced the jurors into changing their verdict, certainly not at gunpoint. (See Tr. Vol. III, 3/30/11, pp. 125-35). Although petitioner claims that the transcripts were deliberately altered, petitioner has no evidence to support this claim. Petitioner did file a complaint against the court reporter Ms. Jennifer Warner. In response to the complaint, Ms. Warner reviewed the transcripts and determined that the transcripts were correct with the exceptions of two minor changes to pages 17 and 21 of Volume 3 of the transcript. Ms. Warner denied that there was any merit to petitioner's other allegations and specifically denied altering any of the pages which dealt with the taking of the verdict. Significantly, petitioner has presented no affidavits from his trial counsel, the jurors, or from any courtroom spectators which would support his claim that the judge coerced a guilty verdict. Because petitioner has presented no clear and convincing evidence to rebut the Michigan Court of Appeals' factual determination, he is not entitled to habeas relief on his claim.

**C. Claim # 3. The 180 day rule claim.**

Petitioner next alleges that he was brought to trial in violation of the 180 day rule set forth in M.C.L.A. 780.131; M.S.A. 28.969(1) and M.C.R. 6.004(d).

The Court notes that petitioner's third claim is unexhausted because he raised it

only for the first time in his application for leave to appeal with the Michigan Supreme Court. Raising a claim for the first time before the state courts on discretionary review does not amount to a "fair presentation" of the claim to the state courts for exhaustion purposes. See *Castille v. Peoples*, 489 U.S. 346, 351 (1989). Because petitioner failed to present his third claim on his direct appeal with the Michigan Court of Appeals, his subsequent presentation of this claim to the Michigan Supreme Court does not satisfy the exhaustion requirement for habeas purposes. See *Skinner v. McLemore,* 425 Fed. Appx. 491, 494 (6th Cir. 2011); *Farley v. Lafler,* 193 Fed. Appx. 543, 549 (6th Cir. 2006).

A habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). A habeas petitioner's failure to exhaust his or her state court remedies is not a bar to federal habeas review of the claim "when the claim is plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings." *Friday v. Pitcher,* 200 F. Supp. 2d 725, 744 (E.D. Mich. 2002); 28 U.S.C. § 2254(b)(1)(A)(c). Because petitioner's claim lacks merit, in the interests of efficiency and justice, the Court will address petitioner's claim, rather than dismiss the petition on exhaustion grounds. See *Welch v. Burke*, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999).

Petitioner is not entitled to habeas relief on his claim that he was brought to trial in violation of Michigan's 180 day rule set forth in M.C.L.A. 780.131; M.S.A. 28.969(1) and M.C.R. 6.004(d) because it is essentially a state law claim. See *Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 748 (E.D. Mich. 2005); *Burns v. Lafler,* 328 F. Supp. 2d 711, 722 (E.D. Mich. 2004). A violation of a state speedy trial law by state

officials, by itself, does not present a cognizable federal claim that is reviewable in a habeas petition. *Burns,* 328 F. Supp. 2d at 722 (citing *Poe v. Caspari*, 39 F. 3d 204, 207 (8th Cir. 1994); *Wells v. Petsock*, 941 F. 2d 253, 256 (3rd Cir. 1991)). Petitioner's allegation that the State of Michigan violated its own 180 day rule would therefore not entitle him to habeas relief. *Shanks,* 387 F. Supp. 2d at 748; *Burns,* 328 F. Supp. 2d at 722.

In addition, Michigan's 180 day rule would not apply to petitioner because he was not incarcerated in a state penal institution awaiting trial and the 180 day rule does not apply to criminal defendants like petitioner who were incarcerated in a county jail awaiting trial. *Shanks,* 387 F. Supp. 2d at 748 (citing *People v. Patterson*, 170 Mich. App. 162, 166; 427 N.W. 2d 601 (1988); *People v. Merkerson*, 147 Mich. App. 207, 213; 382 N.W. 2d 750 (1985)). Petitioner is not entitled to habeas relief on his third claim.

**D. Claim # 4. The evidentiary hearing claim.**

Petitioner finally argues that he is entitled to habeas relief because the trial judge denied him an evidentiary hearing. Petitioner's fourth claim is unexhausted because it was never presented to either Michigan appellate court on petitioner's direct appeal. As with petitioner's third claim, the Court will nonetheless reject the claim on the merits rather than send it back to the state courts.

Whether the Michigan courts erred in denying petitioner's motion for an evidentiary hearing on any of his claims is a question of state law that cannot be reviewed in a federal habeas petition. *See e.g. Hayes v. Prelesnik*, 193 Fed. Appx. 577, 584 (6th Cir. 2006). Moreover, there is no clearly established Supreme Court law which recognizes a constitutional right to a state court evidentiary hearing to develop a claim.

*Id.* Petitioner is not entitled to habeas relief on his fourth claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas

Corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

Dated: June 19, 2014

                                              s/George Caram Steeh
                                              GEORGE CARAM STEEH
                                              UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 19, 2014, by electronic and/or ordinary mail and also on Frederick Harris #176396, Parnall Correctional Facility, 1780 E. Parnall, Jackson, MI 49201.

s/Barbara Radke
Deputy Clerk

---